**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MIGDOEL BERRIOS,**

        **Plaintiff,**

 **vs.**              **3:12-cv-00970
                    (MAD)**

**CAROLYN W. COLVIN**
*in place of Michael Astrue*,

         **Defendant.**
_____

**APPEARANCES:**          **OF COUNSEL:**

**LEGAL SERVICES OF CENTRAL**    **CHRISTOPHER CADIN, ESQ.**
**NEW YORK, Inc.**
472 South Salina Street
Suite 300
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**  **STEPHEN P. CONTE, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Migdoel Berrios brings this action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny his application for supplemental security income ("SSI").

### II. BACKGROUND

Plaintiff is forty-one years old and was last employed in 2006. *See* Dkt. No. 8-5 at 136. Plaintiff grew up in Puerto Rico and is a native Spanish speaker. *See* Dkt. No. 1 at 18. At the hearing, through an interpreter, Plaintiff testified that he has difficulty reading, writing and expressing himself in English. *See id.* Plaintiff completed high school in Puerto Rico. *See id.* at 17. Thereafter, Plaintiff went to college for two years, where he pursued studies in English and liberal arts. *See id.*

On December 30, 2009, Plaintiff protectively filed an application for SSI alleging a disability beginning on April 4, 2000. *See* Dkt. No. 1 at 2, 13.[1] Plaintiff's claim was denied, and he requested a hearing by an Administrative Law Judge ("ALJ"). *See* Dkt. No. 1 at 2. On April 5, 2011, ALJ F. Patrick Flanagan held a hearing by video teleconference. *See id.* In his hearing, Plaintiff claimed that he was disabled due to depression, low back pain, asthma, an inability to stand for more than thirty minutes at a time, difficulties sleeping, depersonalization, a hernia, stomach problems, and anxiety. *See* Dkt. No. 8-2 at 41-43, 47-52. On August 26, 2011, the ALJ issued a decision denying Plaintiff's claim for benefits. *See* Dkt. No. 1 at 2. Plaintiff appealed, and on April 27, 2012, the Appeals Council denied Plaintiff's request for review. *See* Dkt. No. 1 at 3. The ALJ's decision is therefore the Commissioner's final decision. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996).

### III. DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any

---

[1] When the Court refers to a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The plaintiff carries the initial burden of proving that he or she is disabled within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A); *see also Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002).

The Commissioner follows a five-step process to evaluate disability claims, determining the following:

> (1) whether the claimant is currently engaged in substantial gainful activity – if so, the claimant is not disabled, (2) whether the claimant has a severe impairment that limits the claimant's mental or physical ability to do basic work activities, (3) if the claimant has a severe impairment, whether the claimant has a "listed impairment" (an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1) – if so, there is an irrebuttable presumption of disability, (4) if the impairment is not "listed", whether the claimant has residual functional capacity to perform the claimant's past work, notwithstanding the claimant's severe impairment, and (5) if the claimant is unable to perform past work, whether there is other work the claimant would be able to perform.

*Credle v. Apfel*, 4 Fed. Appx. 20, 22 (2d Cir. 2001) (citing *Shaw v. Carter*, 221 F.3d 126, 132 (2d Cir. 2000) (summarizing five-step analysis under 20 C.F.R. §§ 404.1520, 416.920)); *see also Sweet v. Astrue*, 510 Fed. Appx. 26, 27-28 (2d Cir. 2013) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983)). "The claimant bears the burden of proof at steps one through four; at step five, the SSA bears a limited burden, but 'need only show that there is work in the national economy that the claimant can do; [it] need not provide additional evidence of the claimant's residual functional capacity.'" *Pellam v. Astrue*, 508 Fed. Appx. 87, 89 (2d Cir. 2013) (quoting *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).

According to 42 U.S.C. § 405(g), the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d 496 at 501 (2d Cir. 1998) (citing *Richardson v. Perales*, 402 U.S. 389, 401); *see also Rosa*, 168 F.3d at 77 ("Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). A court must set aside an ALJ's ruling "only where it is based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation omitted).

In the present case, the ALJ first found that Plaintiff had "not engaged in substantial gainful activity since December 30, 2009, the application date." *See* Dkt. No. 1 at 15. At the second step, the ALJ concluded that Plaintiff's severe impairments consist of "major depressive disorder, asthma, and low back disorder." *See id.* The ALJ concluded that these disorders "cause significant limitations in the claimant's ability to perform basic work activities." *See id.* At the third step of the analysis, the ALJ determined that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. *See id.* at 20. At step four, the ALJ found that, during an eight-hour work day, Plaintiff "has the residual functional capacity (RFC) to lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds frequently; stand and/or walk for a total of six hours; and sit for a total of six hours; but he needs to avoid concentrated exposure to fumes, dusts, and other known pulmonary irritants." *See id.* at 21. The ALJ also found that "the claimant is able to follow and understand simple directions and instructions, maintain a regular schedule, learn new tasks, perform some complex tasks, make appropriate decisions, relate adequately with others, and has adequate stress-management skills." *See id.* Thereafter, the ALJ determined that Plaintiff has no past relevant work, his age is "defined as a younger individual," he "is not able to

communicate in English, which is considered the same as being an individual who is illiterate in English," and that "transferability of job skills is not an issue, because the claimant does not have past relevant work." *See id.* at 25. The ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *See id.* The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Act. *See id.* at 27.

In seeking federal judicial review of the Commissioner's decision, Plaintiff raises the following arguments: (1) the ALJ "improperly evaluated and weighed" medical evidence; (2) "the ALJ's severity determination is inaccurate and not based upon substantial evidence;" (3) "[t]he determined Residual Functional Capacity (RFC) is inaccurate and not based upon substantial evidence;" and (4) "[v]ocational evidence was required; reliance on the GRIDS was improper." *See* Dkt. No. 11 at 18-31.

## A. Duty to Develop the Record

"An ALJ has an obligation to develop the administrative record, including, in certain instances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information." *Lukose v. Astrue*, No. 09-CV-962S, 2011 U.S. Dist. LEXIS 125497, *9 (W.D.N.Y. Oct. 31, 2011) (citing *Schaal*, 134 F.3d at 505). The ALJ will obtain additional evidence if he or she is unable to make a disability determination based on the current record. *See* 20 C.F.R. § 404.1527(c)(3) (2011).[2] The regulations provide that, "[i]f the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence

---

[2] The regulations were amended in 2012; the Court will apply the 2011 regulations in the present case, however, as the ALJ's decision was made prior to the amendment.

we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence." 20 C.F.R. § 404.1527(c)(3) (2011). This duty exists even if Plaintiff is represented by counsel. *See Perez*, 77 F.3d at 47.

Plaintiff claims that the ALJ "recognized that no treating source gave an opinion as to Plaintiff's specific physical functioning," and that "[t]he ALJ has an affirmative duty to fully and fairly develop the record." *See* Dkt. No. 11 at 27. Although the burden is on the ALJ to develop the record because of the non-adversarial nature of SSI cases, the Court has received no indication that Plaintiff has a treating physician. Plaintiff has never mentioned the name of, or that he even has, a treating physician in his memoranda; the existence of a treating physician was not asserted in Plaintiff's hearing. Further, no treating physician was mentioned in the records from Plaintiff's hospital visits over the years. The ALJ, therefore, assigned great weight to the consultative physician's opinion, which was thorough and based on an in-person examination of Plaintiff. The consultative physician's opinion is consistent with both Plaintiff's medical records and Plaintiff's treating psychiatrist's and therapist's evaluations of his physical abilities. As such, the Court finds that the lack of evidence regarding a treating physician does not necessitate remand.

**B.     The Evaluation and Weight of Medical Evidence**

Plaintiff claims that the ALJ improperly evaluated and weighed the medical evidence in determining that he is not disabled. *See* Dkt. No. 11 at 18. Plaintiff asserts that the ALJ incorrectly gave the medical opinion of Dr. Argiro, Plaintiff's treating psychiatrist, authoritative weight. *See id.* at 19. Plaintiff asserts that Dr. Argiro's opinion is "not consistent with the record as a whole." *See id.* Plaintiff claims that the ALJ should have instead given more weight to Dr.

6

Moore's consultative evaluation. *See id.* at 19-21. After two consultative examinations, Dr. Moore concluded that Plaintiff had weak adaptive behaviors and interpersonal relationships; she also concluded that Plaintiff suffered from mild mental retardation. *See id.* at 20. Plaintiff argues that Dr. Moore's "opinions are not 'widely inconsistent' with the preponderance of the evidence" and should be given authoritative weight. *See id.* Plaintiff further asserts that Dr. Argiro did not submit him to "medically acceptable clinical and laboratory diagnostic tests." *See id.* at 21. In addition, Plaintiff argues that the ALJ should have given less weight to the evaluation of Dr. Magurno, the physical consultative examiner. *See id.* at 21-22. Dr. Magurno concluded that Plaintiff had no limitations in walking or standing, and that he had "mild" difficulties in social functioning. *See id.*

"Under a rule adopted by the Commissioner of Social Security, in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (citing 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2)(2002)). "When assessing the opinions of a claimant's physicians, an ALJ must give controlling weight to the opinion of a treating physician where it is '"supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."'" *Pidkaminy v. Astrue*, No. 5:11-CV-865, 2013 U.S. Dist. LEXIS 8313, *7 (N.D.N.Y. Jan. 22, 2013) (citations omitted) (quotation omitted). "'Medically acceptable clinical and laboratory diagnostic techniques' include consideration of '[a] patient's report of complaints, or history, [a]s an essential diagnostic tool.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citing *Green-Younger*, 335 F.3d at 107). More weight is given to the opinions of treating sources because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

7

your impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2). Significantly, "[n]ot all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." *Id.* In fact, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citation omitted).

In the present case, the ALJ "placed great weight, pursuant to the treating source rule, . . . on the medical opinion of the claimant's treating psychiatrist, Dr. Argiro, which concluded that [Plaintiff] maintained the ability to perform work despite his psychiatric condition." *See* Dkt. No. 1 at 23. Dr. Argiro treated Plaintiff regularly for over two years. *See* Dkt. No. 8-7 at 203-06. The ALJ reasoned that Dr. Argiro's evaluation is "consistent with, and supported by a preponderance of, the competent and other evidence of record, as well as by the longitudinal record of medical care." *See* Dkt. No. 1 at 24.

The ALJ accepted the mental RFC assessment performed by Dr. Meade, the State Agency review psychologist, which found that "even with the claimant's psychiatric limitations, he still retained the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain concentration and attention, maintain a regular schedule, learn new tasks, perform some complex tasks, make appropriate decisions, relate adequately with others, and had adequate stress-management skills." *See id.* Dr. Meade's assessment was based on Dr. Long's consultative psychiatric exam as well as Dr. Argiro's records. *See id.* The ALJ gave Dr. Long's opinion substantial weight, as the ALJ found that Dr. Long's opinion was consistent with and supported by the other evidence. *See id.*

The ALJ, however, placed little weight on Dr. Moore's opinion. Dr. Moore performed

8

psychological and intellectual assessments of Plaintiff for determination of employability, and concluded that Plaintiff is "moderately limited to very limited in his ability to function." *See id.* Dr. Moore's opinion contradicted Dr. Argiro's opinion, so the ALJ chose to give greater weight, pursuant to the treating physician rule, to Plaintiff's treating physician's opinion. *See id.* The ALJ held that Dr. Argiro's opinion was supported by that of Amy Kilpatrick, the therapist that treated Plaintiff for over two years. Moreover, the ALJ rejected Plaintiff's claim that Dr. Argiro's analysis was inadequate because the analysis lacked an Axis V evaluation, as Dr. Argiro did Global Assessment of Functioning ("GAF") ratings of Plaintiff, which are Axis V evaluations, consistently while treating him. *See id.* at 24-25.

In evaluating Plaintiff's physical health, the ALJ gave "considerable weight" to the "consultative internal medicine examination . . . by Dr. Magurno," as there are no opinions on record from a source that regularly treated Plaintiff's physical health. *See id.* at 25. Dr. Magurno's opinion is consistent with the physical analyses of Plaintiff performed by his mental health specialists, and from various physicians from his hospital visits over the years.

The ALJ's decisions regarding the weight to accord various doctors' evaluations are supported by substantial evidence, and do not present legal error. The evidence regarding Plaintiff's mental health does vary, and Dr. Moore's evaluation is not consistent with Dr. Argiro's evaluation of Plaintiff. Dr. Argiro, however, treated Plaintiff regularly for over two years and his evaluation is consistent with the observations of Plaintiff's therapist, who treated him for a similar period of time. Dr. Argiro's evaluation is fully supported by the evidence in the record and, therefore, the ALJ's application of the treating source rule is supported by the evidence and was not in error.

**C.    Severity Determination**

Plaintiff argues that the ALJ's decision regarding the severity of his conditions is not supported by substantial evidence. In the second step, the ALJ concluded that Plaintiff's only severe impairments were major depressive disorder, asthma, and low back disorder. *See* Dkt. No. 1 at 15.

"A 'severe' impairment is one that significantly limits an individual's physical or mental ability to do basic work activities." *Meadors v. Astrue*, 370 Fed. Appx. 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). "[B]asic work activities" are defined as the "abilities and aptitudes necessary to do most jobs," examples of which include,

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). The plaintiff has the burden at this step in the sequential evaluation process to demonstrate the severity of his or her impairment. *See O'Grady v. Comm'r of Social Sec.*, No. 09-CV-1121, 2011 U.S. Dist. LEXIS 92388, *9 (N.D.N.Y. July 5, 2011) (citing 20 C.F.R. § 404.1512(a)).

Plaintiff argues that his "panic disorder, post-traumatic stress disorder, generalized anxiety disorder, social phobia, and mental retardation/limitations" should have been classified as severe. *See* Dkt. No. 11 at 26. Upon review of the record, the Court finds that the ALJ's decision that Plaintiff was only severely impaired by his major depressive disorder, asthma, and low back

10

disorder is supported by substantial evidence.

When a claimant alleges that a mental impairment is "severe," "[t]he Regulations require the ALJ to utilize a 'special technique' at each step of the administrative review process.'" *Rosado v. Barnhart*, 290 F. Supp. 2d 431, 437 (S.D.N.Y. 2003) (citing 20 C.F.R. §§ 416.920(a), 404.1520a(a)). First, the ALJ must evaluate the claimant's symptoms, as well as other signs and laboratory findings, and determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *see also Dudelson v. Barnhart*, No. 03 Civ. 7734, 2005 WL 2249771, *10 (S.D.N.Y. May 10, 2005) (citation omitted). If a medically determinable impairment exists, the ALJ must "rate the degree of functional limitation resulting from the impairment[.]" 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). This process requires the ALJ to examine all relevant clinical and laboratory findings, as well as the effects of the symptoms on the claimant, the impact of medication and its side effects, and other evidence relevant to the impairment and its treatment. *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1). The ALJ must rate the degree of the claimant's functional limitation in four specific areas, referred to as "Paragraph B" criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ rates the first three areas on a five-point scale of "none," "mild," "moderate," "marked," and "extreme," and the fourth area on a four-point scale of "none," "one or two," "three," and "four or more." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

Plaintiff's mental disorders that he argues should have been categorized as severe are all anxiety-related disorders, listed under 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.06. In order to be classified as severe, an anxiety-related disorder must result in marked restriction of at least one of the first three functional areas, or in repeated episodes of decompensation of extended

duration, or "complete inability to function independently outside the area of one's home." 20 C.F.R., Part 404, Subpart P, Appendix 1.

In the present case, the ALJ gave authoritative weight to the opinions of Dr. Magurno, Dr. Meade, and Dr. Long in determining Plaintiff's level of mental functioning, finding that Plaintiff has mild restrictions in his activities of daily living, mild difficulties in maintaining his social functioning, moderate difficulties in maintaining his concentration, persistence, or pace, and has not experienced any periods of decompensation of extended duration. *See* Dkt. No. 1 at 19- 20.

The ALJ concluded that Plaintiff is not mentally retarded because "the Regulations require a showing of significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . before age 22." *See* Dkt. No. 1 at 17 (citing 20 CFR Part 404, Subpart P, Appendix 1, Part A, § 12.05). The ALJ stated that Plaintiff submitted no evidence of mental retardation before the age of 22. *See id.* Further, the ALJ determined that, based on Plaintiff's medical evaluations, he "does not have the deficits in adaptive functioning required to support a diagnosis of mental retardation." *See id.* The ALJ gave little weight to Dr. Moore's opinion that Plaintiff has mental retardation because the opinion is contradicted by the other evidence in the record. *See id.* at 18. The evidence also demonstrates that Plaintiff can and does function independently outside of his home. *See id.* at 19. As such, the ALJ's conclusion that Plaintiff is not mentally retarded is supported by substantial evidence in the record.

Upon review of the record, the Court finds that the ALJ's decision that Plaintiff is only severely impaired due to his major depressive disorder, asthma, and low back disorder is supported by substantial evidence. Although the ALJ's conclusion is based on substantial evidence, "because the ALJ concluded that Plaintiff had other impairments considered severe

under the Act . . . and continued with the sequential analysis, any arguable error in his finding with respect to the severity of Plaintiff's [other disorders] was harmless." *Cook v. Astrue*, No. 08–CV-1351, 2011 U.S. Dist. LEXIS 66395, *13 (N.D.N.Y. May 24, 2011) (citing *Maziarz v. Sec. of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (stating that once the Secretary has determined one ailment is severe, he is required to continue his analysis; when determining the claimant's RFC, the Secretary will then consider the claimant's other ailments, and they will ultimately affect the RFC regardless of whether the ALJ deemed them serious or not).

**D.     Residual Functional Capacity**

According to the Second Circuit, the RFC is

> "what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotation omitted). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, and symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(a). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. *See* 20 C.F.R. §§ 404.1545(b)-(e). "The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may

13

affect his ability to work." *Napierala v. Astrue*, No. 07-CV-0706, 2009 U.S. Dist. LEXIS 115612, *16 (W.D.N.Y. Dec. 11, 2009) (citing 20 C.F.R. § 404.1513(c), (d)).

Plaintiff claims that the ALJ's RFC is inaccurate and not based upon substantial evidence, stating that "[p]erformance of basic daily activities does not necessarily contradict allegations of disability." *See* Dkt. No. 11 at 29 (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). The ALJ determined that

> during the course of an eight-hour workday, the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds frequently; stand and/or walk for a total of six hours; but he needs to avoid concentrated exposure to fumes, dusts, and other known pulmonary irritants . . . [T]he claimant is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain concentration and attention, maintain a regular schedule, learn new tasks, perform some complex tasks, make appropriate decisions, relate adequately with others, and has adequate stress-management skills.

*See* Dkt. No. 1 at 21. In making this decision, the ALJ first "determine[d] whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." Then, the ALJ "evaluate[d] the intensity, persistence, and limiting effects of the claimant's ability to do basic work activities." *See id.* at 22. "[W]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [the ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." *See id.* The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the symptoms alleged by the claimant." *See id.* at 23. The ALJ found "the claimant's statements concerning the intensity, persistence, and limiting effects of [his] symptoms are only partially credible." *See id.*

The ALJ put varying weight on Plaintiff's physicians' opinions in order to draw conclusions about the extent to which Plaintiff's impairments limited him. The ALJ noted that Plaintiff's treating psychiatrist stated that "it would not be in the claimant's best long-term interest to be disabled from work," and that Plaintiff's "treating mental health clinic would not support his application for disability benefits." *See* Dkt. No. 1 at 23. The ALJ accepted Dr. Meade's RFC assessment, determining that "[t]he subsequent treating records of Dr. Argiro certainly do not show any worsening of the claimant's condition," and found there to be "support in the longitudinal record of medical care for Dr. Meade's determination," which was based on a review of Dr. Long's consultative examination as well as Dr. Argiro's records. *See id.* at 24.

In addition to discussing Plaintiff's depression and its treatment, the ALJ discussed the evidence in the record as it relates to Plaintiff's lower back pain and asthma. *See id.* at 22-23. The ALJ noted that the medical evidence indicates that Plaintiff was first diagnosed with asthma in October of 2004, and as having chronic asthma on March 26, 2009. *See id.* at 22. Further, the medical record indicates, as the ALJ noted, that his condition was found to be stable on December 14, 2009 and that his shortness-of-breath episodes have been relieved by medication. *See id.* (citation omitted).

As to Plaintiff's lower back pain, the ALJ found that Plaintiff "reported intermittent lower back pain on March 26, 2009, but acknowledged that this condition was stable." *See id.* at 23 (citation omitted). Further, Plaintiff denied back pain on October 21, 2009, November 16, 2009, and December 14, 2009. *See id.* (citation omitted). Moreover, during Plaintiff's consultative exam with Dr. Magurno on March 15, 2010, Plaintiff complained of non-radiating low back pain. *See id.* Dr. Magurno's physical exam of Plaintiff "disclosed some limitation of motion in his lumbar spine, but no reflex, sensory, or motor loss or weakness." *See id.* (citation omitted).

Finally, the ALJ noted that Plaintiff informed Dr. Margurno during his consultative exam that he was not taking any pain medication or receiving any medical treatment for his lower back pain. *See id.* (citation omitted).

In determining Plaintiff's RFC, the ALJ evaluated and considered the objective medical evidence, Plaintiff's testimony, and Plaintiff's written submissions. The ALJ discussed Plaintiff's treatments with Dr. Argiro and Dr. Kilpatrick, his consultative examinations with Dr. Meade, Dr. Long, and Dr. Magurno, as well as Dr. Moore's assessment of him for determination of employability. The ALJ also noted that, during his hearing, Plaintiff testified that he "goes out to appointments, visits with his mother, and keeps in touch with friends in Puerto Rico." The ALJ also noted that Plaintiff testified that he has his own apartment, cleans his apartment, cooks and does laundry. *See* Dkt. No. 1 at 19. The ALJ considered Plaintiff's Axis V evaluations, and the ALJ referenced Plaintiff's childhood in Puerto Rico, as well as his suicidal ideation in June of 2008. *See* Dkt. No. 1 at 22. After this "acute episode of depression with suicidal thinking" in June of 2008, Plaintiff remained in therapy with Dr. Argiro. *See id.* The ALJ considered the longitudinal record of Plaintiff's care, and Plaintiff does not cite to any medical evidence that was not addressed or considered by the ALJ.

Based on the foregoing, the Court finds that the RFC assessment is supported by substantial evidence, and finds no legal error with the ALJ's determination.

**E.     Reliance on grids**

Plaintiff asserts that the ALJ's reliance on grids was improper, and that the ALJ erred in failing to elicit vocational expert testimony. *See* Dkt. No. 11 at 29. Plaintiff claims that "the Commissioner must introduce vocational evidence that jobs exist in the national economy which

Plaintiff is capable of performing," as "GRIDS do not take into account mental impairments." *See* Dkt. No. 11 at 30 (citing *Butts v. Barnhart*, 338 F.3d 377 (2d Cir. 2004); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996); *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)). Plaintiff argues that, "[i]f non-exertional impairments significantly limit[ ] the range of work permitted by the exertional limitations, then resort to the GRIDS is inappropriate." *See* Dkt. No. 11 at 30 (citing *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06).

Under the Act, the Commissioner bears the burden of proof for the final determination of disability. *See Pratt*, 94 F.3d at 38. Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable vocational guidelines (the grids)." *Rosa*, 168 F.3d at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The grids take into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy. *See Rosa*, 168 F.3d at 78. Whether the grids should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved. *See Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grids is appropriate. *See id.* If, on the other hand, nonexertional impairments significantly limit the range of work permitted by exertional limitations, then use of the grids is inappropriate; in which case further evidence and/or testimony is required. *See Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06. In such cases, the ALJ may rely on the grids only as a framework for decision making. *See* 20 C.F.R. § 416.969a(d). Nonexertional limitations include postural limitations, environmental limitations, as well as difficulties functioning due to anxiety or depression. *See* 20 C.F.R. § 416.969a(c). As one court has explained, "[a] nonexertional limitation is one imposed by the claimant's impairments that

17

affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids. *Bapp*, 802 F.2d at 603. The testimony of a vocational expert that jobs exist in the economy which the claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work – over and above any incapacity caused solely from exertional limitations – so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.* Under these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform" in order to satisfy the burden at step five. *Rosa*, 168 F.3d at 78 (quotation omitted). Therefore, when considering nonexertional impairments, the ALJ must first consider whether the range of work the plaintiff could perform is so significantly diminished due to the combined effect of a plaintiff's limitations as to require the introduction of vocational testimony. *See Samuels v. Barnhart*, No. 01 Civ. 3661, 2003 U.S. Dist. LEXIS 8173, *44 (S.D.N.Y. May 13, 2003).

In the present matter, the ALJ "determined that the claimant's nonexertional limitations do not restrict the claimant's capacity to make a successful adjustment to other work." *See* Dkt. No. 1 at 27. The ALJ determined that "[t]he claimant [ ] has nonexertional limitations due to his environmental and mental restrictions." *See id.* at 26. The ALJ considered Plaintiff's "environmental limitations," including his need "to avoid concentrated exposure to fumes, dusts, and other known pulmonary irritants." *See id.* The ALJ held that this restriction has a minimal

18

impact on Plaintiff's work opportunities "because most job environments do not involve a great deal of respiratory irritants." *See id.* (citing SSR 85-15) (stating that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great nose, amounts of dust, etc.")). Regarding Plaintiff's mental abilities, the ALJ held that Plaintiff "maintains the capacity to meet the three basic mental demands that are required for the performance of competitive and remunerative unskilled work." *See id.* at 26-27 (citing 20 C.F.R. § 416.9219b; SSR 85-15). Therefore, the ALJ found that "the ability of the claimant to perform the full range of work at the light level of exertion has not been compromised by his nonexertional limitations, and the claimant's occupational base at the light level of work has not been eroded." *See id.* at 27.

The ALJ determined that the present case is a situation in which Plaintiff's "nonexertional limitations clearly have very little effect on the sufficiency of the remaining exertional job base;" therefore, "the vocational profile and maximum sustained exertional work capability in . . . the Medical-Vocational Guidelines would not be affected." *See id.* (citing to SSR 83-14). The ALJ concluded that "[b]ecause the claimant's nonexertional limitations have not resulted in any erosion to his occupational base, the testimony of a vocational expert is unnecessary." *See id.* In the present case, the ALJ fully considered the amount to which Plaintiff's nonexertional impairments will diminish his ability to perform light work. The ALJ met his burden of "adequately explain[ing] or determin[ing] the extent to which [the] nonexertional impairment would further diminish [Plaintiff's] capacity to perform 'light work.'" *Bapp*, 802 F.2d at 603.

For the aforementioned reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; as such, any appeal from this Order will be to the Court of Appeals for the Second Circuit; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 29, 2013
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge